UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ERIC KNOX,

               Petitioner,

    -vs-

DAVID ROCK,
SUPERINTENDENT OF
THE UPSTATE CORRECTIONAL FACILITY

             Respondent.

_____

**DECISION AND ORDER**
**No. 11-CV-00882(MAT)**

## I.   Introduction

*Pro se* Petitioner Eric Knox ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered May 15, 2009, in New York State, Chemung County Court, convicting him, upon a jury verdict, of Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law ("Penal Law") § 265.03[3]), and convicting him, upon a plea of guilty, of Rape in the Second Degree (Penal Law § 130.30[1]).[1]

## II.  Factual Background and Procedural History

### A.   The People's Case at Trial

On August 3, 2008, in the Village of Horseheads, New York, Petitioner rented room 161 for one night at the Red Carpet Inn. Trial Trans. [T.T.] 28-30.  While visiting someone at the same

---

[1]
    The second-degree rape conviction is not at issue in the instant habeas proceeding.

motel, Renee Goins ("Goins"), who had known Petitioner for a few years, encountered him in the motel parking. T.T. 34, 38,[2] 54. Petitioner invited Goins to his motel room. When they arrived, there was another man in the motel room, who Petitioner introduced to Goins as "Meat". T.T. 38-39. While the three individuals were talking, Petitioner removed a black gun from his waist and tried to get Goins to hold it, to which she refused. "Meat" left the motel room, and Goins did not observe him handle the gun. Petitioner placed the gun inside a nightstand, and then drove Goins home. T.T. 40-43. When Goins got home, she called the police. Goins spoke with police investigators and accompanied them to the courthouse in Horseheads. There, she told a judge that Petitioner had a gun. T.T. 44-45.

Meanwhile, Police Investigators Jeffrey Gotschall and Dan Ortiz went to the motel parking lot and maintained surveillance of the door of room 161. T.T. 66-70. At about 2:55 p.m., a white Pontiac Grand Am pulled into the parking lot and parked next to the officers. Petitioner and a woman exited the car and entered room 161. T.T. 70-72. The investigators called for another surveillance team, and Investigator Christopher Bonham relieved Officers Gotschall and Ortiz, who parked at commercial building next door. T.T. 72, 77-78. At about 3:39 p.m., Petitioner and the woman left the motel room and drove away in their vehicle.

---

[2]    Pages 35-37 of the trial transcript, which contain a portion of Goins's testimony on direct examination, are missing from the bound transcript volume submitted by Respondent in conjunction with this proceeding.

T.T. 78-79. Sergeant Scott Zelko, who was working with the surveillance team and was parked on a nearby street, was told to stop the white Pontiac that was headed in his direction. T.T. 87-88. When Sergeant Zelko saw the car, he stopped it and took Petitioner into custody. T.T. 88-91.

Sergeant William Bresser obtained a search warrant for room 161 and went to the Red Carpet Inn to execute the warrant. T.T. 95-96. Sergeant Bresser recovered a loaded .38 caliber revolver inside a desk drawer. For safety reasons, Sergeant Bresser removed the three live rounds from the gun. T.T. 99-103. Sergeant Bresser gave the gun to another officer, who then took the gun to the crime laboratory for testing. T.T. 109. A fingerprint belonging to Demetrius Molina ("Molina") was recovered from the cylinder of the gun. T.T. 171-172, 174. Sergeant Bresser testified that Molina's street name was "Meat". T.T. 109-110.

At trial, the parties stipulated to the introduction of two redacted reports –- a firearms tool mark report which stated that the gun was test-fired and operable and a biological sciences case report which stated that certain DNA material that was recovered from the gun matched DNA recovered from a buccal swab of Petitioner. T.T. 179-190.

Also at trial, the People introduced two audio recordings and corresponding transcripts that had been obtained as the result of an eavesdropping warrant for an unrelated investigation. The recordings were conversations between Petitioner and other

individuals in which Petitioner acknowledged possession of the gun and his surprise that his fingerprints were not on the gun. T.T. 139-147, 148-153, 154-157; Resp't Ex. D.

**B.    The Defense's Case at Trial**

Petitioner had been living with his grandmother, Georgia Knox ("Knox"), at 410 Sullivan Street, in Elmira, New York until she asked him to move out in July 2008.  She enlisted the services of process server Leo Krolak ("Krolak") to inform Petitioner that he had to leave his grandmother's home.  T.T. 192-194, 196-197, 197-198.  Petitioner testified that after he left his grandmother's home, he slept in his car for one night.  The following night, he checked into the Mark Twain Hotel and stayed there for two days. Petitioner testified that he stayed at the Mark Twain Hotel with Goins.  T.T. 199-202, 206.  According to Petitioner, he and Goins left the Mark Twain Hotel on August 4, 2008 "around check-out time" and then checked-in to the Red Carpet Inn later that same day for one night.  T.T. 200.  Petitioner testified that he went in to the lobby of the Red Carpet Inn to check-in by himself, while Goins waited in the  car, and rented room 161.  T.T. 202.

While Petitioner was in room 161, Molina, a/k/a "Meat", came to Petitioner's room wearing Isotoner-brand gloves.  When Petitioner asked Molina why he was wearing gloves, Molina showed Petitioner a gun.  Petitioner took the gun from Molina's hand, looked at it, and gave it back.  Petitioner testified that he asked Molina why he had a gun, and Molina indicated that he had been

involved in a "shoot-out" a few days earlier, "that he was running from somebody shooting at him," and that he "got [the gun] as a means of protection."  T.T. 203.  After talking for awhile, Petitioner planned to take Goins home so that he could spend time alone with another female friend.  Molina was also leaving, but Petitioner told him that he would not be permitted in Petitioner's car with the gun.  Molina asked Petitioner if he could leave the gun in the motel room and pick it up later, and Petitioner did not answer him.  According to Petitioner, Molina left the gun in the motel room, and Petitioner picked it up and placed it in a desk drawer.  The three then left the motel.  T.T. 202-203, 210-211, 213.

**C.   The People's Rebuttal at Trial**

After Petitioner testified at trial, the People recalled Goins.  Goins testified that she did not go to the Red Carpet Inn with Petitioner.  According to her, she went to the Red Carpet Inn by herself, and when she went to Petitioner's  motel room, "Meat" was already inside.  T.T. 233.  Goins testified that she never saw "Meat" with a gun and she did not see him touch the gun.  She also testified that "Meat" did not ask Petitioner to keep the gun in the room, and Petitioner did not tell "Meat" that he could not take the gun in Petitioner's car.  T.T. 233-234.  Goins testified that when Petitioner drove Goins home, there was no one else in the car and that "Meat" was not in the motel room when Goins and Petitioner

left.  Goins testified further that no one in the motel room wore gloves.  T.T. 234-237.

### D.  Verdict and Sentence

On March 4, 2009, the jury found Petitioner guilty as charged of second-degree weapon possession.  T.T. 316.  He was subsequently sentenced to a determinate prison term of 8 years and five years post-release supervision.[3]  Sentencing Mins. [S.M.] 6-7.

### E.  Petitioner's Direct Appeal

In a counseled brief, Petitioner appealed his judgment of conviction in the Appellate Division, Third Department on the following grounds: (1) his weapon possession conviction was not supported by legally sufficient evidence and was against the weight of the evidence; (2) his sentence for the weapon possession conviction was harsh and excessive; and (3) his plea to second-degree rape was not knowingly, intelligently, and voluntarily entered.  See Resp't Ex. B.  Petitioner also filed a *pro se* supplemental brief in which he argued that trial counsel was ineffective because counsel: (1) failed to file a motion to suppress the handgun; (2) failed to request that the minutes of the jury selection be recorded, which limited Petitioner's ability to challenge the allegedly improper conduct that occurred during voir dire; (3) failed to prepare Petitioner and other defense witnesses

---

[3]
At that time, he was also sentenced to a concurrent, determinate prison term of 2 years and 1 ½ years of post-release supervision on his guilty plea to second-degree rape.  S.M. 6-7.

to testify effectively; (4) failed to file an omnibus motion; (5) failed to secure Petitioner's testimony before the grand jury; (6) failed to secure Petitioner's right to be present during sidebar conferences with prospective jurors; (7) failed to object to the scope of the People's rebuttal witness; (8) improperly stipulated to the admission of the firearms report; and (9) failed to object to the trial court's jury instruction that Petitioner knowingly and unlawfully possessed the handgun. See Resp't Ex. C. On January 13, 2011, the Third Department unanimously affirmed the judgment of conviction, and leave to appeal was denied. People v. Knox, 80 A.D.3d 887 (4th Dep't 2011) (Resp't Ex. E), lv. denied, 16 N.Y.3d 860 (Resp't Ex. H).

**F. Petitioner's Motion to Vacate the Judgment of Conviction**

On or about August 26, 2010, Petitioner moved, pursuant to New York Criminal Procedure Law ("CPL") § 440.10, to vacate the judgment of conviction on the basis that he was denied the effective assistance of counsel because counsel failed to: (1) file a motion to suppress the handgun; (2) failed to have the minutes of the voir dire transcribed and thus the record did not permit him to raise a challenge to his exclusion to sidebar conferences with jurors, a challenge to the improper seating of biased jurors, or a challenge to the prosecutor's discriminatory use of peremptory challenges; (3) seek a jury instruction that "the jurors may find that the defendant's . . . possession of the handgun was temporary and innocent lawful possession"; (4) object to the trial court's

jury instruction on the elements of the weapon possession charge; and (5) present the firearms expert as a witness. See Resp't Ex. I. The Chemung County Court denied the motion on the basis that Petitioner's claims "could have been raised on direct appeal." See Resp't Ex. K. Leave to appeal was denied. See Resp't Ex. M.

### G. The Federal Habeas Corpus Petition

The instant habeas corpus petition followed, wherein Petitioner seeks relief on the basis that his trial counsel was ineffective because counsel: (1) failed to "object to the selection of a biased panel of jurors that under represented the class of African/Americans to which Petitioner is a member"; (2) failed to interview and prepare Petitioner and other defense witnesses to testify effectively; (3) conducted limited to no cross-examination of the prosecution witnesses; (4) failed to object to the prosecutor's use of the redacted firearms lab report on the grounds that the document constituted inadmissible hearsay and violated his confrontation rights; and (5) failed to present sufficient facts and legal grounds to warrant suppression of the handgun, which denied Petitioner a hearing on his suppression motion. See Pet., Grounds One-Four (Dkt. No. 1). Respondent filed a response and supporting memorandum in opposition to the petition (Dkt. No. 10).

For the reasons that follow, the writ of habeas corpus is denied and the petition is dismissed.

## III. The Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054 (1995). "Exhaustion of state remedies requires that a petitioner fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights," Cornell v. Kirkpatrick, 665 F.3d 369, 375 (2d Cir. 2011) (quoting Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011), cert. denied, 132 S. Ct. 265 (2011)), i.e., the "petitioner must 'present[ ] his [or her] claim to the highest court of the state.'" Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (alterations in original) (quoting Morgan v. Bennett, 204 F.3d 360, 369 (2d Cir. 2000)). "In developing and refining the 'fairly present[ed]' standard, the Supreme Court has concentrated on the degree of similarity between the claims that a petitioner presented to the state and federal courts." Smith v. Duncan, 411 F.3d 340, 349 (2d Cir. 2005) (alteration in original, citation omitted).

Respondent raises exhaustion as an affirmative defense to all of Petitioner's claims, except his claim that trial counsel failed

to interview and prepare Petitioner and other defense witnesses to testify effectively.  <u>See</u> Resp't Answer at ¶ 4.  The Court disagrees with Respondent's argument, and finds that all of Petitioner's claim, except for his claim that counsel conducted limited to no cross-examination of the prosecution witnesses, were properly raises in the state courts are therefore exhausted for purposes of federal habeas review.

## IV.  The AEDPA Standard of Review

For federal constitutional claims adjudicated on the merits by a state court, the deferential standard of review codified in the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") applies. A habeas petitioner can only obtain habeas corpus relief by showing that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).

For those claims that were adjudicated on the merits in the state courts, the AEDPA standard of review applies.  Under that standard, Petitioner's claims are meritless.

## V.  Analysis of the Petition

At grounds one through four of the habeas petition, Petitioner argues that he received ineffective assistance of counsel because

his trial attorney: (1) failed to "object to the selection of a biased panel of jurors that under represented the class of African/Americans to which Petitioner is a member"; (2) failed to interview and prepare Petitioner and other defense witnesses to testify effectively; (3) conducted limited to no cross-examination of the prosecution witnesses; (4) failed to object to the prosecutor's use of a redacted firearms lab report on the grounds that the document constituted inadmissible hearsay and violated his confrontation rights; and (5) failed to present sufficient facts and legal grounds to warrant suppression of the handgun, which denied Petitioner a hearing on his suppression motion. <u>See</u> Pet., Grounds One-Four. For the reasons set forth below, the Court finds that Petitioner's ineffective assistance of counsel claims do not warrant habeas relief.

**(A) Petitioner's Claim that Counsel Conducted Limited to No Cross-Examination of Prosecution Witnesses is Unexhausted but Deemed Exhausted and Procedurally Defaulted**

As discussed *supra* at section III, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. §2254(b)(1)(A).

Respondent argues that Petitioner's claim that he received ineffective assistance of counsel because counsel conducted limited to no cross-examination of the prosecution witnesses is unexhausted

because Petitioner failed to raise it on direct appeal and/or in his motion to vacate in the state courts. See Resp't Answer at ¶4. Because Petitioner no longer has a state court forum in which to raise this claim, Respondent asserts that the claim should be deemed exhausted and procedurally defaulted from habeas review. See Resp't Mem. of Law at p 14-15 (citing Grey v. Hoke, 933 F.2d 117, 120-121 (2d Cir. 1991)). The Court agrees, as Petitioner has already used his one right to appeal (see 22 N.Y.C.R.R. §§ 600.80(b), 500.10(a)), and collateral review of this record-based claim is precluded by CPL § 440.10(2)(c) (precluding review of record-based claims that could have been raised on direct appeal but unjustifiably were not).

Federal courts may not review procedurally barred claims unless the petitioner can show both cause for the default and prejudice resulting therefrom, or that a fundamental miscarriage of justice would occur if the federal court declines to review the habeas claim. Coleman v. Thompson, 501 U.S. 722, 749-50 (1991). Here, Petitioner has not alleged any circumstance that would constitute cause for the default. Thus, there is no need to analyze whether prejudice resulted. Stepney v. Lopes, 760 F.2d 40, 45 (2d Cir. 1985). The "fundamental miscarriage of justice" exception requires a showing of actual innocence, and Petitioner has not presented any new evidence suggesting that he could meet this standard. Murray v. Carrier, 477 U.S. 478, 496, 106 S. Ct.

2639, 91 L. Ed. 2d 397 (1986). Consequently, Petitioner's claim that he received ineffective assistance of counsel because counsel conducted limited to no cross-examination of the prosecution witnesses is procedurally defaulted from habeas review, and is denied on this basis.

**(B) Petitioner's Remaining Ineffective Assistance of Counsel Claims are Exhausted and Meritless**

With respect to Petitioner's remaining ineffective assistance of counsel claims, Respondent argues that all but one of these claims -- that counsel was ineffective for failing to interview and prepare Petitioner and other defense witnesses to testify effectively -- are unexhausted because they are raised for the first time in the habeas petition. See Resp't Answer at ¶4. The Court disagrees with Respondent's position. A careful review of the record -- with an eye toward liberal construction of Petitioner's *pro se* pleadings -- reveals that Petitioner did indeed raise these remaining claims in the state courts in either or both his *pro se* appellate brief and his motion to vacate. See Resp't Exs. C, I. Although Petitioner has not pled the instant remaining claims with the same specificity he did in the state courts, he raises, in sum and substance, the same factual and legal arguments he raised in the state courts. Accordingly, the Court finds that Petitioner's remaining claims are exhausted, and now turns to the merits of them.

The Court notes that some of Petitioner's remaining claims --
namely, those that were raised in his motion to vacate -- appear to
be, at the least, subject to a procedural default as a result of
the Chemung County Court's denial of Petitioner's motion to vacate
on procedural grounds. See Resp't Ex. K. In denying the motion to
vacate, the Chemung County Court determined that relief was not
warranted because Petitioner's claims "either were or could have
been raised on direct appeal as they are all a matter of record."
The county court went on to deny the claims, in the alternative, on
the merits. See id. To avoid the unnecessarily tedious task of
having to parse out precisely which claims (or parts of claims)
were raised where in the state courts and to avoid potentially
complex procedural issues arising from the Chemung County Court's
decision denying Petitioner's motion to vacate on procedural
grounds, the Court bypasses the procedural aspect(s) of
Petitioner's remaining claims and resolves them all on the merits.
See Boddie v. New York State Div. of Parole, 288 F. Supp.2d 431,
439 (S.D.N.Y. 2003) ("[I]n habeas corpus cases, potentially complex
and difficult issues about the various obstacles to reaching the
merits should not be allowed to obscure the fact that the
underlying claims are totally without merit.") (quotation omitted).

In order to succeed on a claim of ineffective assistance of
counsel under Strickland v. Washington, 466 U.S. 668 (1984), a
petitioner must show both that his counsel committed errors that

were objectively unreasonable under prevailing norms of practice, and that prejudice inured to the petitioner as a result. Strickland, 466 U.S. at 687. In the context of federal habeas corpus review of a Strickland claim, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). "[B]ecause the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a petitioner has not satisfied that standard." Id. (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Thus, habeas courts must apply "doubly deferential judicial review" to Strickland claims. Id.

**(1)   Failure to Interview and Prepare Petitioner and Other Defense Witnesses to Testify Effectively**

Petitioner argues that he received ineffective assistance of counsel because counsel failed to interview and prepare him and other defense witnesses to testify effectively. See Pet., Ground Two. This claim is meritless.

Initially, Petitioner has failed to substantiate this claim, as he does not explain how or in what way counsel failed to adequately prepare him or the defense witnesses, nor does he elucidate what counsel should have or could have done differently. Furthermore, he does not indicate what evidence was not elicited

-15-

for the defense as a result of counsel's alleged failure to prepare any or all of the defense witnesses.

Moreover, the claim is belied by the record, which reflects that, from the outset of the trial, counsel pursued a cogent theory of defense, arguing that because Petitioner was evicted from his grandmother's home and had nowhere to go, he made his home in the rented motel room, such that his possession of the gun did not constitute second-degree weapon possession (a Class C felony).[4] The testimony counsel elicited from the defense witnesses, Petitioner included, fully established this defense. Specifically, in his opening statement, counsel introduced Petitioner's defense that the motel where the gun was kept and ultimately found was Petitioner's home. At that time, counsel also laid the foundation for Petitioner's trial testimony that the gun belonged to Molina. T.T. 20-22. At trial, counsel presented witnesses whose testimony established that Petitioner had been evicted from his grandmother's home prior to the incident. Further, the record reflects that counsel skillfully guided Petitioner through his direct testimony and elicited from Petitioner that he had been living in motels after he left his grandmother's house. Through counsel's pointed

---

[4]

Penal Law § 265.03(3) provides that "[a] person is guilty of criminal possession of a weapon in the second degree when such person possesses any loaded firearm. ***Such possession shall not . . . constitute a violation of this section subdivision if such possession takes place in such person's home or place of business***." Penal Law § 265.03(3) (emphasis added).

line of questioning, Petitioner testified that Molina had brought the gun to the motel and left it in the desk drawer after Petitioner refused to allow Molina to carry it in to Petitioner's car. Moreover, the record shows that counsel also successfully objected to the People's attempt to introduce on rebuttal Goins's testimony that Petitioner attempted to persuade her to alter her trial testimony. T.T. 226-230. And, during summation, counsel challenged Goins's credibility, suggesting that Petitioner's account of how she came to be in Petitioner's hotel room was more reasonable than her version of events. T.T. 266-268. Counsel argued that Goins called the police, not because she was concerned that Petitioner had a gun, but because she was jealous because Petitioner intended to bring another woman into his hotel room. T.T. 268. Counsel emphasized Petitioner's testimony that the gun belonged to Molina and relied on the results of the fingerprint analysis to support that argument. T.T. 269. Counsel also drew on the testimony of Knox and Krolak to emphasize that the motel was indeed Petitioner's home, and that Petitioner's possession of the gun did not therefore constitute second-degree weapon possession. T.T. 270-274. Thus, given the facts and circumstances of this case, Petitioner's attorney pursued an entirely reasonable defense. Moreover, Petitioner has not demonstrated, or even so much as alleged, prejudice resulting from counsel's alleged error. As noted above, Petitioner has failed to articulate any way in which

counsel's alleged failure to interview and prepare Petitioner and other defense witnesses to testify effectively worked to his detriment, and none is apparent from the record.  Thus, it cannot be said that there is any probability -- let alone a reasonable one -- that the outcome of Petitioner's trial would have been different, but for counsel's alleged error.

Accordingly, Petitioner's claim is meritless.  To the extent the state courts adjudicated this claim on the merits, said adjudication did not contravene or unreasonably apply clearly established Supreme Court law.  This claim is denied.

**(2)   Failure to "Object to the Selection of a Biased Panel of Jurors that Under-Represented the Class of African/Americans to which Petitioner is a Member"**

Petitioner asserts that he received ineffective assistance of counsel because counsel failed to "object to the selection of a biased panel of jurors that under-represented the class of African/Americans to which Petitioner is a member."  Petitioner contends that there is no record for this claim because his trial attorney failed to have the voir dire minutes transcribed.  Pet., Ground One.  This claim lacks merit.

As Respondent points out (see Mem. of Law at p 22-23), it is not clear whether Petitioner is claiming that there was a lack of African Americans who were empaneled as jurors, or that the entire panel of prospective jurors was biased and under-representative of the number of African Americans in the community.  The manner in

which Petitioner raised these claims in the state courts does little in the way of offering clues as to the precise nature of this claim. For example, in both his *pro se* appellate brief and his motion to vacate, he cites to state court cases that, in turn, cite to Batson v. Kentucky, 476 U.S. 78 (1986) to support this claim. See Resp't Ex. C at p 32; Resp't Ex. I at ¶15. Additionally, in his motion to vacate, he states "that there is in fact an . . . issue regarding the trial prosecutor and defense counsel exercis[ing] their challenges in a discriminatory manner resulting in strikes that led to the selection of an all white (Caucasian) jury." See Resp't Ex. I at ¶5. Thus, it would seem then that Petitioner is attempting to raise a Batson-type argument. However, in his motion to vacate, he also states that, "[he] is entitled to a jury that is composed of jurors that represent a cross-section of the community and a jury that does not exclude a race or people or ethnic class to which defendant belongs." Id. This language, on the other hand, suggests to the Court that Petitioner's claim is related to the racial makeup of the entire panel of prospective jurors (rather than those who were actually empaneled). In either case, and even without a transcript of the voir dire proceedings (which may or may not have recorded the racial makeup of the jury), the claim fails because it is entirely unsubstantiated and conclusory in nature. Petitioner has made no allegation regarding the number of African Americans in the

community, nor has he asserted the number or percentage of African Americans in the jury pool. Furthermore, he does not indicate which juror(s) were biased against him, the nature of the alleged bias, or how said bias was exhibited.

Accordingly, the claim is denied because it is conclusory and unsupported by sufficient factual allegations. <u>See</u> <u>Wood v. Bartholomew</u>, 516 U.S. 1, 8 (1995) (federal courts should not grant "habeas relief on the basis of little more than speculation with slight support"); <u>see</u> <u>also</u> <u>Osinoiki v. Riley</u>, CV-90-2097, 1990 U.S. Dist. LEXIS 13327, at *6-7 (E.D.N.Y. Sept. 28, 1990) (conclusory statements based on speculation "are inadequate to satisfy petitioner's burden"); <u>Skeete v. People of New York State</u>, No. 03-CV-2903, 2003 U.S. Dist. LEXIS 20675, *5 (E.D.N.Y. Nov. 17, 2003) (vague, unsupported allegations of constitutional violations and errors during petitioner's state trial did not assert a viable habeas claim.). Petitioner's claim is therefore denied.

**(3) Failure to Object to the Prosecutor's Use of the Redacted Firearms Report on Hearsay or Confrontation Grounds**

Petitioner argues that he received ineffective assistance of counsel because counsel failed to object to the prosecutor's use of the redacted firearms report on hearsay or confrontation grounds. <u>See</u> Pet., Ground Three. This claim is meritless.

The record reflects that the parties stipulated to the introduction of two reports at trial, one of which was a redacted firearms tool mark report which stated that the gun was test-fired

-20-

and operable.  T.T. 179-190.  As discussed *supra* at section V(B)(1), defense counsel theorized at trial that the motel where the gun was found constituted Petitioner's home, such that Petitioner's possession of it did not constitute second-degree weapon possession.  This being the case, it was reasonable for counsel to choose to stipulate to the introduction of the firearms report rather than focus the jury's attention on the weapon itself by having a firearms expert testify about the operability of the gun.  It is highly unlikely that counsel's decision not to object to admission of the report was due to an oversight or his ignorance of the law with respect to state evidentiary rules and/or Petitioner's confrontation rights.  Rather, counsel made a reasoned, tactical decision to stipulate to the introduction of the firearms report to avoid dwelling on facts that would almost certainly be established and maintain the jury's focus on the question of whether the motel constituted Petitioner's home.

Accordingly, this claim is meritless.  To the extent this claim was adjudicated on the merits, said adjudication was neither contrary to nor an unreasonable application of clearly established Supreme Court law.  The claim is therefore denied.

**(4)  Failure to Present Sufficient Facts and Legal Grounds to Warrant Suppression of the Gun or to Obtain a Suppression Hearing**

Finally, Petitioner argues that he received ineffective of counsel because his attorney failed to present sufficient facts and

legal grounds to warrant suppression of the gun or to obtain a suppression hearing.  <u>See</u> Pet., Ground Four.  This claim lacks merit.

Initially, the record reflects that, prior to trial, counsel filed an omnibus motion to suppress the gun by challenging the sufficiency of the search warrant.  <u>See</u> Resp't Ex. A at R-126. Petitioner appears to be claiming here, as he did in the state courts, that a suppression hearing was denied because counsel failed to establish a particular factual and legal basis for suppression -- namely, that Petitioner had an interest in the searched premises (the motel room).  <u>See</u> Resp't Ex. C at p 27-29, Resp't Ex. I at ¶9.  However, Petitioner's interest in the searched premises was not relevant insofar as the search of the motel room was performed pursuant to a warrant.  Thus, counsel appropriately sought suppression with respect to the pertinent question in this case -- i.e., whether the sworn allegations in support of the search warrant were sufficient to justify its issuance.  <u>See</u> <u>generally</u> <u>Payton v. New York</u>, 445 U.S. 573, 585-86 (1980) ("we have long adhered to the view that the warrant procedure minimizes the danger of needless intrusions" on the privacy interests of citizens).  The trial court's denial of counsel's motion without a hearing was not, as Petitioner appears to be suggesting, based on counsel's failure to establish the proper factual and legal basis for the motion, but rather was based on its review of the search

warrant application and its finding that the allegations established probable cause to support the search warrant. <u>See</u> Resp't Ex. A at RA 142. That counsel's suppression motion was ultimately unsuccessful does not amount to ineffective assistance.

Accordingly, the claim is meritless. To the extent the state courts adjudicated this claim on the merits, said adjudication was neither contrary to nor an unreasonable application of clearly established Supreme Court law. Petitioner's claim is denied.

In sum, all of Petitioner's ineffective assistance of counsel claims (grounds one-four of the petition) are meritless. To the extent these claims were raised in the state courts in either or both Petitioner's *pro se* appellate brief and motion to vacate, the state courts' adjudication of these claims was neither contrary to nor an unreasonable application of <u>Strickland</u>. All of Petitioner's ineffective assistance of counsel claims (grounds one-four of the petition) are therefore denied.

## V.  Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. <u>See, e.g.</u>, <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also

hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED**.

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     February 6, 2013
           Rochester, New York